FILED

97 APR 30 PM 1:10

U.S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED

APR 30 1997

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

MARGARET MICKLE,                }
                                }
    Plaintiff,                  }
                                }   CIVIL ACTION NO.
    vs.                         }
                                }   CV 96-AR-0434-S
CITY OF ALABASTER, et al.,      }
                                }
    Defendants.                 }

**MEMORANDUM OPINION**

The court has before it the motion of the only remaining defendant, the City of Alabaster ("City"), for summary judgment in the above-entitled action. Plaintiff, Margaret Mickle ("Mickle"), alleges that the City violated the Civil Rights Act of 1964, *as amended*, the Civil Rights Act of 1991, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII"), by engaging in hostile work environment sexual harassment. Finding that no genuine issues of material fact exist, this court determines that summary disposition under Rule 56 is appropriate.

### I. Pertinent Undisputed Facts

The City of Alabaster hired Mickle, a female, as a police dispatcher in October 1991. She worked for the City in substantially the same capacity until she was terminated in December 1994, for incompetency, inefficiency, conduct unbecoming

1

an employee of the city, neglect of duty and violation of published dispatch procedures. Mickle's termination arose out of her handling of an emergency call on or about November 18, 1994.[1]

Mickle alleges that Sergeant Harmon[2] referred to her on two occasions as "hey bitch." Mickle knows that he was referring to her because she was the only woman in the room on those two occasions. In addition, Sergeant Harmon "leered" at her and her daughter on one occasion when her daughter visited the office. Mickle reported these incidents in writing to her superior officer, Stanley Oliver ("Oliver"). Defendant argues that Mickle did not report said incidents. However, viewing the evidence in the light most favorable to Mickle, this court will proceed as if she did file a written complaint. Thereafter, while Mickle alleges that defendant did nothing, the evidence reflects that Mickle did not experience anymore alleged verbal and/or ocular abuse. Further, Mickle, herself, engaged in vulgar and inappropriate banter at work including the use of words such as "damn" and "shit" and the telling of jokes with sexual innuendo.

---

[1] Mickle alleges that she was terminated in retaliation for complaining about alleged sexual harassment. However, because Mickle has never pled retaliation in her complaint, this court will not address any potential retaliation claim. Perhaps Mickle is proceeding on the reasonable but erroneous assumption that her claim of hostile work environment subsumes her retaliation claim.

[2] It is unclear to the court where exactly Sergeant Harmon fits into the heirarchy. Apparently, however, Sergeant Harmon was a superior officer to Mickle.

On another occasion, Officer Mike Dunkling ("Dunkling") filed a complaint against Mickle, at the request of Sergeant Harmon due to Mickle's delay in reporting an harassment call. Officer Dunkling informed Sergeant Harmon of the incident and thereafter, Sergeant Harmon requested that Officer Dunkling file the complaint. Mickle candidly admits that she did in fact delay in reporting the harassment call, but describes the incident as insignificant. The degree of the significance of any incident is determined by the perspective of its beholder.

Further, Mickle alleges that younger men were getting overtime hours assigned to them and she was not. She does not allege this in her complaint as a separate and distinct cause of action but instead asserts it as evidence of hostile work environment sexual harassment. Mickle orally complained to her immediate supervisor, Lieutenant Frank Page ("Page"). She did not file a written complaint concerning the alleged overtime disparity.[3]

---

[3]There exist numerous facts surrounding allegations that the former Mayor of the City of Alabaster, Roger N. Wheeler ("Wheeler"), engaged in acts creating a hostile and/or abusive work environment premised upon sexual harassment. In fact, the evidence is quite compelling. However, this court has previously ruled that "[t]ry as it might, the court cannot leverage one inference in favor of Mickle to suggest that the EEOC could have been remotely aware, much less able to investigate, Wheeler as a Title VII harasser based upon the allegations made, either generally or specifically, in the EEO charge. As a result, the court finds that Mickle has not filed a charge of harassment based upon sex with the EEO that implicates any of Wheeler's actions." ((Memorandum Opinion April 16, 1996, at 8)(emphasis added). Accordingly, this court will not consider the evidence surrounding the alleged harassing acts of Wheeler in the above-entitled action.

## II. Analysis

### A. *Rule 56*

Rule 56 states, in pertinent part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

F. R. Civ. P. 56(c). The obvious was stated by the Eleventh Circuit as follows: "[s]ummary judgment is appropriate where there exists no genuine issue of material fact and the movant is entitled to judgment as a matter of law." Turnes v. AmSouth Bank, N.A., 36 F.3d 1057, 1061 (11th Cir. 1994). The City has invoked Rule 56.

### B. *Hostile Work Environment Sexual Harassment*

An employee asserting hostile work environment sexual harassment

> must prove the following in order to establish a prima facie case: (1) that the employee belongs to a protected group; (2) that the employee was subject to "unwelcome" sexual harassment; (3) that the harassment complained of was based on sex; and (4) that the harassment complained of affected a "term, condition, or privilege" of the employment in that it was "sufficiently severe or pervasive 'to alter the conditions of [the employee's] employment and create an abusive working environment.'

*Sparks v. Pilot Freight Carriers, Inc.*, 830 F.2d 1554, 1557 (1987)(citations omitted). In addition to these four elements,

4

Mickle must also be able to show indirect liability on the part of the City because it either knew or should have known of the alleged sexual harassment and failed to take prompt remedial action.[4]  See *Steele v. Offshore Shipbuilding, Inc.*, 867 F.2d 1311, 1316 (11th Cir. 1989).

It is clear to the court that Mickle has demonstrated sufficient evidence to establish the first three elements of her prima facie case.  Accordingly, this court will dispense with a lengthy analysis of the first three elements and turn its attention to elements four and five of Mickle's prima facie case.

In order to establish that the harassment affected a term, condition, or privilege of employment, Mickle "must show that the harassment was 'sufficiently pervasive so as to alter the conditions of employment and create an abusive working environment.'" *Moye v. Fleming Co., Inc.*, 924 F. Supp. 1119, 1125 (M.D. Ala. 1996)(quoting *Henson v. City of Dundee*, 682 F.2d 897, 904 (11th Cir. 1982).  This evaluation is not a "mathematically precise test."  *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 22-23, 114 S. Ct. 367, 371 (1993).  Instead, whether the environment is pervasively abusive or hostile is to be determined

---

[4] Because the issue of whether direct or indirect liability attaches through respondeat superior is not determinative in the above-styled action, this court will dispense with a lengthy analysis of each and the apparent conflict within this circuit.  See *Faragher v. City of Boca Raton*, 83 F.3d 1346 (11th Cir. 1996)(granting rehearing *en banc*).

by looking at the totality of the circumstances including, *inter alia*, "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id*.

> This fourth factor has both an objective and subjective component. To be actionable, the conduct must be "severe or pervasive enough to create an objectively hostile or abusive work environment--an environment that a reasonable person would find hostile or abusive," and the victim must "subjectively perceive the environment to be abusive."

*Moye*, 924 F. Supp. at 1126 (citations omitted).

Mickle concludes (and wants this court to conclude) that she was subjected to a sexually hostile and abusive work environment because of alleged actions taken on the part of her superiors and particularly Sergeant Harmon. Mickle offers evidence to demonstrate that she subjectively believed she was exposed to a hostile and abusive work environment. The evidence reflects that Sergeant Harmon twice referred to her as a "bitch" and, in her opinion, looked at her and her daughter inappropriately. While the evidence reflects that Mickle, herself, engaged in vulgar and inappropriate speech while at work, by using such language as "damn," "shit" and telling jokes with strong sexual innuendo, she has, albeit tenuously, established a basis for a subjective belief that she was being harassed.

6

Under the principles set forth in *Harris*, the evidence is not sufficient to demonstrate the <u>objective</u> component of a hostile environment claim. As mentioned above, several factors guide the courts determination of the objective component, including the frequency, severity, and disruptive effect of the alleged harassment. In this case Mickle alleges that the following occurred, she was referred to on two occasions as "hey bitch", that a male officer looked at her inappropriately on one occasion, that younger men were assigned overtime and she was not, and that Sergeant Harmon ordered an officer to file a complaint against her.

Initially, Mickle's argument concerning overtime pay is essentially evidence of a separate and distinct cause of action for disparate treatment gender discrimination and not sexual harassment. *See Cheek v. Western and Southern Life Ins. Co.*, 31 F.3d 497, 503 (7th Cir. 1994)(finding that evidence and claims of sexual discrimination in an EEOC charge are not reasonably related to claims of sexual harassment). The EEOC defines sexual harassment as

> [u]nwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature . . . [when] such conduct as the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment.

7

29 C.F.R. § 1604.11(a)(1996). Accordingly, an allegation of a disparity in the assignment of overtime between men and women, does not fit, no matter how it is spun, into the EEOC's and this court's definition of sexual harassment.

Mickle does not allege a separate cause of action for sexual discrimination premised on overtime in the above-styled action. Instead, she limits her complaint to two varieties of sexual discrimination premised upon sexual harassment, *quid pro quo* and hostile work environment.[5] In fact, she does not even mention the alleged disparity in overtime assignments in her complaint. However, while her deposition testimony concerning alleged disparities in overtime assignments adds little, if any, to the factors the court is to consider, such as, whether the acts were physically threatening or humiliating, the court will consider it in determining the "totality of the circumstances."

In addition, with respect to the claim that Sergeant Harmon directed Officer Dunkling to file a complaint against her, the evidence reflects that the complaint against her, which was based upon the fact that she delayed reporting a harassment call, was accurate. In fact, she readily admits that she did delay in

---

[5] *The quid pro quo* was dismissed by this court in an Order dated April 16, 1996. The court stated that "[t]he only claim remaining in this action is plaintiff's Title VII claim of hostile environment sexual harassment against the City." (Order April 16, 1996, at 2).

8

reporting the harassment file, but considers it to "insignificant." Further, Officer Dunkling, to whom Mickle was delayed in notifying, informed Sergeant Harmon of the incident, and only thereafter did Sergeant Harmon direct the complaint be filed.

The only evidence of hostile work environment sexual harassment to be considered pursuant to the factors established in *Harris*, is that Mickle was called "bitch" twice and looked at funny on one occasion. Such evidence is simply not severe, pervasive or frequent enough to demonstrate hostile work environment sexual harassment. *See Mckenzie v. Illinois Dep't of Transp.*, 92 F.3d 473, 480 (7th Cir. 1996) (holding that three sexually suggestive comments and alleged retaliation for filing claims did not amount to an objectively hostile work environment as a matter of law). To allow such evidence to create a jury opportunity would be to make every smile into a lear and a potential for EEO activity. A mere utterance of an offensive comment or epithet which engenders offensive feelings is simply not enough, without more, to create a hostile work environment. *See Weller v. Citation Oil & Gas Corp.*, 84 F.3d 191, 194 (5th Cir. 1996), *cert. denied*, ___ U.S. ___, 117 S. ct. 682 (1997). Furthermore, even considering Mickle's evidence of an alleged disparity in overtime pay, the evidence does not meet the

9

objective prong of the *prima facie* case as established in *Harris*. Accordingly, the City of Alabaster's motion for summary judgment is due to be granted.

Even if this court had determined that Mickle has established that the working environment was sexually charged, and therefore, that her working conditions were unreasonably affected, Mickle would still fail to establish a *prima facie* case. Mickle has failed to demonstrate that the City of Alabaster knew or should have known of the hostile work environment sexual harassment and thereafter failed to take prompt and appropriate remedial action. *See Steele v. Offshore Building, Inc.*, 867 F.2d 1311, 1316 (11th Cir. 1989).

Mickle alleges that she filed a written complaint after Sergeant Harmon called her a name on two occasions and in her opinion looked at her inappropriately and that the City of Alabaster took no remedial action. It is clear that if an employer takes reasonable steps to rectify the harassment of its employees it has discharged its legal duty. *See Mckenzie*, 92 F.3d 474, 480 (7th Cir. 1996). In the instant action, the evidence reflects that subsequent to Mickle filing her written complaint, with regard to Sergeant Harmon's alleged actions, the

alleged sexual harassment ceased.[6] Accordingly, Mickle has failed to establish the requisite for respondeat superior liability.

### III. Conclusion

The evidence and arguments submitted by the parties do not establish that any genuine issue of material fact exists with regard to any of Mickle's claims. Because no genuine issues of material fact exist and also because this court determines that the City of Alabaster is entitled to judgment as a matter of law, the City of Alabaster's Rule 56 motion will be granted by separate and appropriate order.

DONE this 30th day of April, 1997.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT COURT

---

[6] The evidence does not reflect what steps the City of Alabaster took, if any, to rectify the alleged sexual harassment. However, the evidence is clear that all the alleged sexual harassment ceased after she filed her written complaint.